**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| CURLEY JAMES BOYKIN, § | |
| (TDCJ-CID #1774868) § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-14-1894 |
| § | |
| WILLIAM STEPHENS, § | |
| § | |
| Respondent. § | |

**MEMORANDUM AND OPINION**

Petitioner, Curley James Boykin, seeks habeas corpus relief under 28 U.S.C. § 2254,

challenging a conviction in the 185th Judicial District Court of Harris County, Texas. Respondent

filed a motion for summary judgment, (Docket Entry No. 20), and copies of the state court record.

Boykin has filed his response. (Docket Entry No. 21). After consideration of the motion and

response, the record, and applicable authorities, the court grants respondent's motion. The reasons

for this ruling are stated below.

**I.      Background**

A jury found Boykin guilty of the felony offense of possession with intent to deliver a

controlled substance, namely, cocaine, in an amount weighing more than one gram but less than four

grams. (Cause Number 131959401010). Boykin pleaded true to two enhancement paragraphs

relating to prior convictions for possession of a controlled substance in Cause Number 619549 and

felon in possession of a weapon in Cause Number 726396. On March 14, 2012, the court sentenced

Boykin to twenty-five years imprisonment. The First Court of Appeals of Texas affirmed Boykin's

conviction on August 22, 2013.  Boykin did not file a petition for discretionary review in the Texas

Court of Criminal Appeals.  Boykin filed an application for state habeas corpus relief on March 10,

2014, which the Texas Court of Criminal Appeals denied without written order, on findings of the

trial court, without a hearing on June 18, 2014.  *Ex parte Boykin,* Application No. 35,236-09 at

cover.

On July 7, 2014, this court received Boykin's federal petition.  Boykin contends that his

conviction is void for the following reasons:

(1)     His Confrontation Clause rights were violated because the State introduced testimony from

Officer Zamora regarding a confidential informant without demonstrating that the confidential

informant was unavailable to testify at trial.

(2)     His due process protections were violated because the State did not disclose the confidential

informant's identity and did not allow him to cross-examine the confidential informant.

(3)     Trial counsel, Gerald Fry, rendered ineffective assistance by failing to seek disclosure of the

confidential informant's identity.

(4)     Appellate counsel, Sara Wood, rendered ineffective assistance by failing to schedule a

hearing on the defendant's motion for new trial.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-13).

**II.     Statement of Facts**

The First Court of Appeals summarized the testimony at trial as follows:

> Houston Police Department ("HPD") Narcotics Officer M. Zamora
> testified that he was been specially trained on the subject of how
> cocaine is bought and sold. He explained that the street value for one
> gram of cocaine is $100 and crack cocaine is sold as "rocks" that
> weigh 0.1 to 0.2 grams and cost $10 to $20. Most crack cocaine users

carry only two to three rocks at one time because of the highly-addictive nature of the narcotic. Zamora noted that, in his experience, crack cocaine users do whatever they can to earn some money and then purchase one crack cocaine rock and smoke it, often "on the spot." Thus, it is uncommon for such a user to "walk around" with more crack cocaine rocks unless the person is selling them.

Officer Zamora further testified that early in September 2011, he conducted a "proactive investigation" at the address of 2710 Hardy Street for about one week, during which he "observed activity that was consistent with narcotics trafficking." During all hours of the day, he saw several people arriving at the house on foot, in cars, and on bicycles. They went to the front door or were met at the front, and they then left quickly, with a level of traffic that is not "normal" for a family dwelling. Before executing a search warrant, Zamora also saw people, including appellant, "hanging out" outside of the house most of the times that he watched it. Zamora then met with a confidential informant, who purchased narcotics at the house, and he obtained and executed a search warrant at the house.

Officer Zamora explained that there is near Hardy Street, an area that has high-powered electric lines, and people will often jump a fence and run to the area to dispose of narcotics or guns because it is harder for police officers to find such contraband in the area. Thus, before executing the search warrant, HPD's "entry team" positioned a uniformed police officer on the other side of the fence behind 2710 Hardy Street.

The "raid team" arrived at the house at about 9:30 p.m. on September 9, 2011, and, when they pulled up in a van, Officer Zamora saw appellant and his wife, Lasonya White, run into the house, while two people stayed outside and stood with their hands up. Zamora and HPD Narcotics Officer J. Castro chased appellant and White as they ran inside the house. Zamora saw appellant and White run through the house and out a side door. White fell down and made a "soft toss" of what Zamora believed to be crack cocaine rocks, and he found a crack cocaine rock about one-and-a-half feet away from White's hands where she fell.

Officer Zamora stated that Officer Castro, who saw appellant toss a white pill bottle over the fence near the power lines, took him into custody. Officer J. Annese, who was positioned on the other side of the fence, saw the bottle fly over the fence, and he turned it over to

Zamora. Zamora noted that the bottle contained several crack cocaine rocks, which weighed a total of 6.5 grams, is "way more" than what is normally kept for personal use, and constitutes 30 to 65 "single servings." And Zamora noted that appellant, who had the keys to the suspect house, told Zamora to give the keys to "Mr. Gordon."

Officer Castro testified that he assisted in the surveillance of the house at 2710 Hardy Street and the execution of the search warrant on September 9, 2011. Castro noted that he saw appellant and White run into the house from the front yard when the HPD "raid van" stopped in front of the house. He chased appellant outside the house, toward the back of the driveway, and he saw appellant stop, throw a white pill bottle over the fence, and then immediately turn around and surrender. Castro testified that, based on his training and experience, it is common for people who possess narcotics to run away from police officers and often try to "get rid of" anything they have "on them." Castro took appellant to the front of the house, and he heard someone announce on the radio that a bottle had come over the fence.

HPD Officer J. Annese testified that, during the execution of the search warrant, his job was to provide rear perimeter security behind the backyard fence. He positioned himself on the other side of the fence with another officer, and they waited for anyone that might try to run. After Officer Annese heard the raid team arrive, he heard the footsteps of someone running toward the fence, and he saw a white pill bottle "fly" over the fence as if it was lobbed with a "hook shot." Annese caught the bottle, which he gave to Officer Zamora.

HPD Criminologist J. Hamelius testified that she conducted a chemical spot test on the rock substance dropped by White and the rocks found in the white pill bottle. She also conducted a chromatography mass spectrometer or "GC–MS" analysis on the rocks. And Hamelius confirmed that the rock that White threw on the ground contained cocaine and weighed 0.0324 grams. She also confirmed that 15 of the rocks found in the white pill bottle contained cocaine and weighed a total of 5.2 grams.

*Boykin v. State,* No. 01–12–00291–CR, 2013 WL 4508366 (Tex. App. -- Houston [1st Dist.] 2013, no pet.)(not designated for publication).

III.    **The Applicable Legal Standards**

A.      **28 U.S.C. § 2254**

"[C]ollateral review is different from direct review," *Brecht v. Abrahamson,* 507 U.S. 619, 633 (1993), and the writ of habeas corpus is "an extraordinary remedy," *Id.,* reserved for those petitioners whom "society has grievously wronged." *Id.* at 634.  It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id.* (citing Justice Stevens's concurrence in *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979)).  It provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter,* 562 U.S. 86 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions."). Accordingly, the federal habeas court's role in reviewing state prisoner petitions is exceedingly narrow.  "Indeed, federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn,* 780 F.2d 509, 513 (5th Cir. 1986).  They must generally defer to state court decisions on the merits, *Moore v. Cockrell,* 313 F.3d 880, 881 (5th Cir. 2002), and on procedural grounds. *Coleman v. Thompson,* 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson,* 132 F.3d 214, 220 (5th Cir. 1998).  They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir. 1996).

A federal court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,'" *Berghuis v. Thompkins,* 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (2012). The focus of this well-developed

standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).

Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence. *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell,* 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion").  Indeed, state courts are presumed to know and follow the law. *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002). Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Clark v. Quarterman,* 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact).  The presumption of correctness applies not only to express findings of fact, but also to "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001).

The AEDPA provides as follows, in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1)  In a proceeding instituted by an application for a  writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

In sum, the federal writ serves as a "guard against *extreme malfunctions* in the state criminal justice systems," not as a vehicle for error correction. *Harrington v. Richter,* 562 U.S. 86 (2011) (citation omitted) (emphasis added).  "If this standard is difficult to meet, that is because it was meant to be." *Id.*

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.  Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Boykin is a *pro se* petitioner.  In this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.  *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  This court accords

Boykin's state and federal habeas petitions a broad interpretation. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

### B.    Ineffective Assistance of Counsel

To prove an ineffective-assistance-of-counsel claim, a petitioner must satisfy both prongs of the test announced in *Strickland v. Washington*, 466 U.S. 668, 689–94 (1984), by showing not only constitutionally deficient performance by counsel, but also actual prejudice to his legal position. *Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).   The Court need not address both components if the petitioner makes an insufficient showing on one. *Strickland,* 466 U.S. at 697.  To demonstrate deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  A court considering such a claim "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter,* 562 U.S. 86 (2011) (citation omitted). To demonstrate prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Porter v. McCollum,* 558 U.S. 30, 38–39 (2009) (internal quotation marks and citation omitted).  A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland. Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir. 1994). The probability "of a different result must be substantial, not just conceivable." *Richter,* 131 S. Ct. at 792.  Thus, counsel's performance is entitled to "a heavy measure of deference" by a reviewing court. *Cullen v. Pinholster,* —— U.S. ——, ——, 131 S. Ct. 1388 (2011) (internal quotation marks and citation omitted).

Moreover, the court must review a petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)," *Id.* at 1403, and consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).  Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable:" *Richter,* 131 S. Ct. at 785.

The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.* at 788.

## IV.    The Confrontation Clause Claim

Boykin complains that his Sixth Amendment right to confrontation was violated when the State introduced testimonial statements of a confidential informant.  Officer Zamora testified that his confidential informant purchased crack at Boykin's residence.  Boykin asserts that the admission of this hearsay statement by a nontestifying witness violated his rights under the Confrontation Clause of the Sixth Amendment.  Boykin complains that he never had an opportunity to cross-examine the confidential informant.  Boykin alleges that the prosecutor never established that the

confidential informant was unavailable to testify at trial.  Boykin maintains that the prosecutor should not have been allowed to introduce statements from the probable cause affidavit.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington,* the Supreme Court held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. 36, 53–4 (2004). The Supreme Court held that only "testimonial statements" caused the declarant to be a "witness" within the meaning of the Confrontation Clause. *See id.* at 51.

In *Davis v. Washington,* 547 U.S. 813, 822 (2006), the Supreme Court clarified the distinction between testimonial and nontestimonial statements:

> Without attempting to produce an exhaustive classification of all conceivable statements - or even all conceivable statements in response to police interrogation - as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.*

*Crawford* involved tape recorded statements by a declarant made during a police interview, while *Davis* involved a 9–1–1 call by the declarant detailing a domestic violence dispute. The declarant's interrogation in *Crawford* took place hours after the events she described, but the

declarant in *Davis* spoke about events as they actually occurred.  The Supreme Court noted that any reasonable listener would recognize that the declarant in *Davis* was facing an ongoing emergency and that the questioning was necessary to resolve it. *Davis,* 547 U.S. at 823. This included the operator's effort to establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon. *Id.* Finally, the court noted the difference in formality between the interviews of the *Davis* and *Crawford* declarants. *Davis,* 547 U.S. at 827.  In *Crawford,* the declarant responded calmly at the station house to a series of questions, with the officer-interrogator taping and making notes of her answers. *Id.*  In *Davis,* the declarant's answers were provided over the telephone, in an environment that was neither tranquil nor safe. *Id.*

This court also finds guidance in *Langham v. State,* 269 S.W.3d 108, 113 (Tex. App. - Eastland 2008, pet. granted).  There, a detective was allowed to testify concerning information provided by a confidential informant.  The informant was not "bearing testimony" or making "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" necessary to the criminal prosecution in the case. *Id., citing Crawford,* 541 U.S. at 51.  Instead, the primary purpose was to provide sufficient information to the detective so that he could obtain a search warrant.  These statements were admissible because they were nontestimonial. *Id.* at 114.

In the instant case, Officer Zamora testified about his dealings with the confidential informant as follows:

> Q      (BY MS. DAVIS) And did you ever see Mr. Boykin at 2710 Hardy Street?
> A      Yes, I did.
> Q      How often would you see Mr. Boykin there?
> A      Three out of four times that I would go by, I would see him hanging outside.

Q      What is the next step that you take after you conduct surveillance on a house like this?

A      After we establish that, okay, there's traffic coming in and out, that it's unusual, it's consistent with what we believe to be narcotics trafficking, after that we try to -- basically we need to get some type of narcotics out of that house to say that narcotics are being sold out of that location to take the next step into drafting a narcotics search warrant.

Q      And so how did you do that in this case?

A      I got with a confidential informant and I explained to the informant the situation, what was going on, and I basically gave the informant instructions to go to that location and attempt to purchase narcotics and bring those narcotics back to me.

Q      And what day did you do that? Were you able to do that?

A      Yes, we were able to do that before the narcotics search warrant drafted.

Q      And were you able then to obtain a search warrant?

A      Yes.

MS. DAVIS: May I approach the witness?

THE COURT: You may.

Q      (BY MS. DAVIS) I'm showing you what has been marked as State's Exhibit No. 1.  Does this fairly and accurately represent the search warrant that you were able to obtain?

A      Yes, it does.

MS. DAVIS: Your Honor, may we approach?

THE COURT: Sure.

(Discussion up at bench:)

MS. DAVIS: I would move to admit State's 1. The only issue is the affidavit is in between.

THE COURT: So do you approve of taking out the affidavit, because you are just offering the search warrant and the affidavit in support of that?

MS. DAVIS: Yes.

MS. SHELTON: We have no objection to that either, Your Honor.

MR. FRY: We have no objection to the warrant, but we do object to the affidavit.

THE COURT: If you all don't mind, I'll go ahead and do that while I'm sitting here. (In the hearing of the jury)

THE COURT: State's Exhibit 1 will be admitted.

MS. DAVIS: May I publish this to the jury?

THE COURT: Sure.

(BY MS. DAVIS) Officer Zamora, after you obtain a search warrant, what is the next step in your investigation?

A       After we present the search warrant to a hearing officer or a judge, once the search warrant is signed, our next step is to continue to conduct  surveillance, make sure that everything is still going the way we saw it going originally. Basically if we still think they're still selling crack, or in this situation it was crack out of the house, after that we just come together as a narcotics unit and we get an entry team together, we get marked police cars, uniformed officers, that way there's no confusion about the police presence and why we're there, and we go to the target location, which is 2710 Hardy, and we execute the search warrant.

Q       Let me back up and ask you the question in case some of the jurors may not know. What is a search warrant?

A       Basically a narcotics search warrant, it gives us permission to go to somebody's house that we suspect they're selling narcotics and we have reasonable belief that there is narcotics at that location, and after a judge signs it, that piece of paper grants us permission to go to somebody's house, detain everybody inside and search the location for the narcotics.

(Reporter's Record, Vol. III, pp. 20-24).

During the trial, when questioned by the State as to how he began his investigation of the location in question, Officer Zamora stated that he received information from a confidential informant, which he used to secure the search and arrest warrant.  Officer Zamora investigated the location and then conducted surveillance over a period of several days.

An officer may rely on the information provided by a confidential informant ("CI") when, based on the totality of the circumstances, it determines that the information is sufficient to establish probable cause: veracity, reliability, and the informant's basis of knowledge are "highly relevant" to this inquiry. *See, e.g., Illinois v. Gates,* 462 U.S. 213, 230 (1983).  In *Schaffer v. State,* the Court of Criminal Appeals noted that, frequently, testimony will have an impermissible hearsay aspect along with a permissible nonhearsay aspect. Almost always it will be relevant for a testifying officer to relate how he happened upon the scene of a crime or accident; thus, it is permissible for him to

13

testify that he was acting in response to information received.  An arresting officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct.  The police officer, however, should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that he was entitled to tell the jury the information upon which he acted.

Here, the testimony in question did not reveal the details of the information that the informant provided to Officer Zamora.  Officer Zamora's reference to the confidential informant was merely a general description of possible criminality that provided an explanation for why Officer Zamora developed Boykin as a suspect and later secured a warrant.

Any questioning by police officers was conducted to enable police officers to locate an individual suspected of selling crack cocaine.  Officer Zamora relied on the information from the confidential informant to secure a search warrant of the residence located at 2710 Hardy Street.  The confidential informant's statements to the police were nontestimonial.  The confidential informant simply relayed information to police officers on the scene about what he had seen in relation to his purchase of drugs at 2710 Hardy Street.

Officer Zamora testified about how he procured a search warrant for 2710 Hardy Street.  He explained that he had initially instructed a confidential informant to go to 2710 Hardy Street and purchase narcotics.  Officer Zamora made no further reference to the confidential informant in his testimony.  The record shows that the probable cause affidavit prepared by Officer Zamora was removed from the search warrant before the warrant was admitted into evidence.  Assuming that the State introduced testimonial statements made by the confidential informant, this evidence was not admitted to establish the truth of the matter purportedly asserted.  Neither Officer Zamora's

testimony, nor the search warrant, were offered to prove the truth of the confidential informant's representation that he had been able to purchase drugs at 2710 Hardy Street.  Officer Zamora's trial testimony regarding a confidential informant and the search warrant that was admitted into evidence were offered to prove that there was probable cause to believe that illegal narcotics could be found at a target location, 2710 Hardy Street.

Even assuming error by the trial court, a violation of the confrontation clause is subject to harmless error analysis. *See Delaware v. Van Arsdall,* 475 U.S. 673, 680 (1986); *see also Arizona v. Fulminante,* 499 U.S. 279, 306–07 (1991).  This Court determines whether an erroneous admission of the informant's statements was harmless beyond a reasonable doubt by using the following factors: (1) the importance of the statements to the State's case; (2) whether the statements were cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the informant's statements on material points; and (4) the overall strength of the State's case. *Van Arsdall,* 475 U.S. at 684.  *Under Brecht v. Abrahamson,* the Court may grant federal habeas relief only if a constitutional error had a substantial and injurious effect or influence in determining the outcome of the case. 507 U.S. 619, 623 (1993).  A thorough review of the trial record in the instant case fails to show that Boykin was harmed by any erroneous admission of Officer Zamora's reference to the confidential informant.  Officer Zamora testified that a confidential informant had purchased drugs from the residence located at 2710 Hardy Street.  Officer Zamora did not testify as to any details concerning the purchase of drugs by the confidential informant.

At trial, Officer Zamora testified about a drug raid that took place on September 9, 2011.  The State relied on testimony from several experienced officers who searched Boykin's house and witnessed Boykin in possession of the particular drugs at issue.  Boykin was convicted of possessing

crack cocaine on September 9, 2011.  The jury never heard any specific details about the confidential

informant's purchase of drugs.  Officer Zamora relied on the confidential informant's information

to secure a search warrant.  As it was not necessary to rely on the testimony of the confidential

informant to establish Boykin's drug possession on September 9, 2011, admission of Officer

Zamora's testimony concerning the confidential informant into evidence at the trial was harmless.

The state habeas court found:

> 3. The Court finds, based on the clerk's record and the court reporter's record, that there was no testimony by a confidential informant during the applicant's trial in the primary case.

> 4. The Court finds, based on the clerk's record and the court reporter's record, that Officer Zamora, the lead investigator in the primary case, testified that he gave the informant instructions to go to the applicant's residence and attempt to purchase narcotics and bring those narcotics back. However, Zamora never testified to what was said by the informant. (II CR. at 21-22).

> 5. The Court finds, based on the clerk's record and the court reporter's record, that the State offered into evidence the search warrant used to search the applicant's residence. (III CR at 22); *State's Trial Exhibit 1.*

> 6. The Court finds, based on the clerk's record and the court reporter's record, that the affidavit supporting the warrant was left out, and was not admitted or published to the jury. (III CR at 21-22); *State's Trial Exhibit 1.*

> 7. The Court finds, based on the clerk's record and the court reporter's record, that there is no evidence to support that[] the informant was present during the execution of the warrant leading to the applicant's charges, that the State used the testimony of the informant during trial, that the State caused the absence of that informant, or that the applicant was prevented from confronting the informant.

> 8. The Court finds, based on the clerk's record and the court reporter's record, that there is no evidence that the informant would

have been able to give testimony necessary to a fair determination of guilt and innocence in the primary case.

9. The Court finds, based on the clerk's record and the court reporter's record, that there is no evidence to support that the informant's testimony would likely have changed the outcome of trial.

(Docket Entry No. 15-26, pp. 58-59).

Boykin has failed to show that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Boykin's grounds for review should be denied. Boykin is not entitled to federal habeas corpus relief on this claim.

## V.     Disclosure of the Confidential Informant

Boykin argues that the trial court erred by not requiring the prosecution to disclose the identity of the confidential informant who told Officer Zamora about the drugs in Boykin's house. Boykin complains that the State violated his right to procedural due process by depriving him of the opportunity to confront the confidential informant. Officer Zamora testified that his confidential informant was able to purchase crack from Boykin's residence. Officer Zamora testified that he instructed the confidential informant to go to Boykin's residence and purchase the narcotics. Boykin argues that the trial court should have dismissed the charges because the State refused to disclose the identity of the confidential informant even though the confidential informant could have provided favorable evidence for the defense.

The State possesses a general privilege to withhold the identity of an individual who has provided information that assists in a criminal investigation. TEX. R. EVID. 508(a).  However, a court must order disclosure of the individual's identity if the informant may reasonably be able to provide testimony necessary to a fair determination of guilt or innocence. TEX. R. EVID. 508(c)(2).  If it appears from the evidence in the case, or from some other showing by a party, that an informant may be able to give testimony necessary to a fair determination of guilt or innocence, and the State invokes the privilege, the trial court must give the State an opportunity to show in camera facts relevant to determining whether the informant can, in fact, supply that testimony. *Id.*  The defendant possesses the initial burden to prove that the informant's potential testimony will significantly aid in the determination of the defendant's guilt or innocence. *Bodin v. State,* 807 S.W.2d 313, 318 (Tex. Crim. App. 1991); *Ford v. State,* 179 S.W.3d 203, 210 (Tex. App. - Houston [14th Dist.] 2005, pet. ref'd), *cert. denied,* 549 U.S. 922 (2006).  Evidence from any source, but not mere conjecture about possible relevance, must be presented. *Bodin,* 807 S.W.2d at 318; *Haggerty v. State,* 429 S.W.3d 1, 8 (Tex. App. - Houston [14th Dist.] 2013, pet. ref'd).  The mere filing of a motion to reveal an informant's identity is insufficient to obtain a hearing, much less compel disclosure. *Bodin,* 807 S.W.2d at 318.  The defendant must make a plausible showing of how the informant's information may be important, and only after such a showing is the trial court required to hold an in camera hearing to determine whether disclosure is necessary. *See Haggerty,* 429 S.W.3d at 8.

Disclosure of an informant's identity may be required if the informant was an eyewitness to or participated in an alleged offense. *Ford,* 179 S.W.3d at 210 (citing *Anderson v. State,* 817 S.W.2d 69, 72 (Tex. Crim. App. 1991)).  Similarly, disclosure may be required if the informant was present at the time of the offense or arrest or was otherwise shown to be a material witness to the transaction.

*See Anderson,* 817 S.W.2d at 72; *Washington v. State,* 902 S.W.2d 649, 656–57 (Tex. App. - Houston [14th Dist.] 1995, pet. ref'd).  This court reviews the district court's decision not to disclose the identity of a confidential informant for an abuse of discretion. *United States v. Sanchez,* 988 F.2d 1384, 1391 (5th Cir. 1993).   "The purpose of the [informer's] privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States,* 353 U.S. 53, 59 (1957).  However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61.

In weighing the government's interest in confidentiality against the defendant's interest in disclosure, the Fifth Circuit has established a three-pronged test to determine when disclosure is mandated. *United States v. Cooper,* 949 F.2d 737, 749 (5th Cir. 1991).  Under this test, this court examines: (1) the level of the informant's participation in the alleged criminal activity; (2) the helpfulness of disclosure to any asserted defense; and (3) the government's interest in nondisclosure (the "*Roviaro* factors").  *See Roviaro,* 353 U.S. at 62–65; *United States v. Diaz,* 655 F.2d 580, 587–89 (5th Cir. 1981).  Neither an *in camera* review nor an "on-the-record" *Roviaro* analysis is required in every instance involving disclosure of a CI's identity. *See Diaz,* 655 F.2d at 588 ("We do not think that it was necessary for the district court to interview the informant in camera for we conclude that the informant's testimony could not have been significantly helpful to the appellant's defense."); *United States v. Hernandez–Vela,* 533 F.2d 211, 213 (5th Cir. 1976) ("[A]n *appellant* must develop such factors on the record to support an assertion of such error.")(emphasis added);

*see also United States v. Alexander,* 559 F.2d 1339, 1344 (5th Cir. 1977) ("We refuse to adopt a rule requiring a district court to hold an *in camera* hearing whenever the identity of an informant is requested."); *United States v. Toombs,* 497 F.2d 88, 90 (5th Cir. 1974) (affirming a district court's bench ruling that the defendant's motion for disclosure was "not . . . sufficient to require the Court to grant the motion.").  Furthermore, Boykin's interest in the disclosure is limited by the fact that the CI's testimony was only used to establish probable cause to search Boykin's house and was not introduced by the Government at trial. *See United States v. Jackson,* 918 F.2d 236, 240 (1st Cir. 1990) ("[T]he defendant's interest in disclosure at the suppression state is less than at trial.").

With these principles in mind, this court turns to the *Roviaro* factors.  The first factor, the CI's involvement in the crime, weighs in favor of nondisclosure.  "The more active the participation, the greater the need for identification." *United States v. Ayala,* 643 F.2d 244, 246 (5th Cir. 1981).  This factor does not weigh in favor of disclosure where an informant was only a tipster, or when his "level of involvement in the criminal activity is that of minimal participation." *Diaz,* 655 F.2d at 588.  Here, the informant had only minimal participation in the alleged criminal activity.  The informant's role was more akin to that of a tipster.  Officer Zamora testified that he instructed the confidential informant to attempt to purchase narcotics from Boykin's residence.  Based on information learned from the confidential informant, Officer Zamora was able to secure a search warrant of Boykin's residence.  Boykin has pointed to no evidence in the record that suggests that the CI's involvement was more than minimal, so this factor does not weigh in favor of disclosure.

The second factor, the helpfulness of disclosure to any asserted defense, also weighs in favor of nondisclosure.  Boykin's stated reason for wanting to call the CI as a witness is to test his credibility. *See United States v. Orozco,* 982 F.2d 152, 155 (5th Cir. 1993) ("Mere conjecture or

supposition about the possible relevancy of the [CI's] testimony is insufficient to warrant disclosure."); *see also Toombs,* 497 F.2d at 93 n.5 ("Much more than speculation is required. There must be a compelling reason for the disclosure.").  Similarly, because the CI's information only went to establishing probable cause for searching Boykin's home, his credibility cannot be put at issue. This is, at least in part, because "the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told." *McCray v. Illinois,* 386 U.S. 300, 307 (1967).  Similarly, there is no indication that the CI's testimony would be exculpatory, which would require disclosure pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963).

There was substantial evidence in the record that the drugs found in Boykin's home belonged to Boykin.  The testimony at trial showed that on September 9, 2011, the "raid team" arrived at Boykin's house at about 9:30 p.m.  Officer Zamora saw Boykin and his wife, Lasonya White, run into the house.  Officer Zamora and HPD Narcotics Officer J. Castro chased Boykin and White through the house.  Officer Zamora saw Boykin and White run through the house and out a side door.  White fell down and made a "soft toss" of what Officer Zamora believed to be crack cocaine rocks, and he found a crack cocaine rock about one-and-a-half feet away from White's hands where she fell.  After seeing Boykin toss a white pill bottle over the fence near the power lines, Officer Castro took Boykin into custody.  Castro testified that, based on his training and experience, it is common for people who possess narcotics to run away from police officers and often try to "get rid of" anything they have "on them."

Officer J. Annese, who was positioned on the other side of the fence, saw the bottle fly over the fence, and he turned it over to Officer Zamora.  Officer Zamora noted that the bottle contained several crack cocaine rocks, which weighed a total of 6.5 grams and that this amount was

significantly more than what is normally kept for personal use.  Officer Zamora noted that Boykin

had the keys to the suspect house located at 2710 Hardy Street.  Boykin further told Officer Zamora

to give the keys to "Mr. Gordon."  HPD Officer J. Annese testified that, during the execution of the

search warrant, his job was to provide rear perimeter security behind the backyard fence.  He

positioned himself on the other side of the fence with another officer, and they waited for anyone that

might try to run.  After Officer Annese heard the raid team arrive, he heard the footsteps of someone

running toward the fence, and he saw a white pill bottle "fly" over the fence.  Officer Annese caught

the bottle and gave it to Officer Zamora.   HPD Criminologist J. Hamelius testified that she

conducted a chemical spot test on the rock substance dropped by White and the rocks found in the

white pill bottle.  She also conducted a chromatography mass spectrometer or "GC–MS" analysis

on the rocks.  She also confirmed that 15 of the rocks found in the white pill bottle contained cocaine

and weighed a total of 5.2 grams.  In light of the overwhelming evidence of guilt, Boykin has not

shown that disclosure of the confidential informant's identity would have been helpful to any

asserted defense.

Because the first two *Roviaro* factors do not establish a case for disclosure, this court need

not consider the third factor, the government's interest in nondisclosure. *See Cooper,* 949 F.2d at

749–50.

The state habeas court concluded:

> 3. The State has a privilege to refuse or disclose the identity of a
> person who has furnished information relating to or assisting in an
> investigation of a possible violation of a law. TEX. R. EVID. 508.
>
> 4. However, if it appears from the evidence in the case or other
> showing that an informer may be able to give testimony necessary to
> a fair determination of guilt and innocence and the State invokes the

privilege, the trial court shall allow the State to show in camera facts relevant to determine whether the informer can, in fact, supply the testimony. *Id.* 508(c)(2).

5. If the trial court finds that there is a reasonable possibility that the informer can give the testimony and the State elects not to disclose the identity, the judge on motion of the defendant shall dismiss the charges to which the testimony would relate. *Id.*

6. The applicant has failed to meet his burden of proof and demonstrate that the informant was present during the execution of the warrant leading to the applicant's charges, that the State used the testimony of the informant during trial, that the State caused the absence of that informant, or that the applicant was prevented from confronting the informant.

7. The State had a privilege to refuse to disclose the identity of the informant. TEX. R. EVID. 508 (West 2013).

8. The applicant was afforded due process in the instant application.

(Docket Entry No. 15-26, pp. 60-61).

Boykin has failed to show that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Boykin's grounds for review should be denied.  Boykin is not entitled to federal habeas corpus relief on this claim.

## VI.    The Claim of Ineffective Assistance of Trial Counsel

Boykin complains that trial counsel rendered ineffective assistance by failing to discover the identity of the confidential informant.  Boykin asserts that counsel failed to file a motion seeking to discover the confidential informant's identity.

23

The state habeas court found:

> 1. The Court finds, based on the clerk's record and the court reporter's record, that the applicant was represented in the primary case by Gerald Fry (hereinafter referred to as "Fry") at his trial.
>
> . . . .
>
> 7. The Court finds, based on the clerk's record and the court reporter's record, that there is no evidence to support that, the informant was present during the execution of the warrant leading to the applicant's charges, that the State used the testimony of the informant during trial, that the State caused the absence of that informant, or that the applicant was prevented from confronting the informant.
>
> 8. The Court finds, based on the clerk's record and the court reporter's record, that there is no evidence that the informant would have been able to give testimony necessary to a fair determination of guilt and innocence in the primary case.
>
> 9. The Court finds, based on the clerk's record and the court reporter's record, that there is no evidence to support that the informant's testimony would likely have changed the outcome of trial.
>
> 10. The Court finds, based on the clerk's record and the court reporter's record, that there is no evidence to support that trial counsel would have been successful in pursuing a motion to reveal the identity of the confidential informant.
>
> 11. The Court finds, based on the clerk's record and the court reporter's record, that trial counsel's failure to seek disclosure of the confidential informant's identity was not deficient and did not cause the applicant harm. *See* TEX. R. APP. P. 50(d).
>
> . . .
>
> 14. The Court finds that the applicant failed to specifically allege any factual basis that supports the allegations that his trial counsel provided deficient conduct or how he was prejudiced as a result in the instant application.

(Docket Entry No. 15-26, pp. 57-60).

The state habeas court concluded:

> 9. The applicant fails to overcome the strong presumption that trial counsel's conduct was within the range of reasonable professional assistance. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. Ap[p]. 1999) (citing *Strickland v. Washington,* 466 U.S. 668 (1984).

> 10. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel. *Mercado v. State,* 615 S.W.2d 225, 228 (Tex. Crim. App. 1981).

(Docket Entry No. 15-26, pp. 61-62).

Boykin faults his counsel for failing to object to Officer Zamora's testimony regarding the confidential informant.  As noted, Officer Zamora only referred to the confidential informant in explaining how he was able to establish probable cause for a search warrant.  Boykin's conclusory allegation is unsupported.  "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard,* 691 F.2d 796, 798 (5th Cir. 1982).  Further, counsel is not ineffective for failing to raise meritless objections. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) ("[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite").

To establish his ineffective-assistance-of-counsel claim, Boykin must show that his counsel's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 68 (1984).  Counsel made a strategic decision not to file a motion for the disclosure of the confidential informant's identity.  This court's "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.  Counsel is presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant

to plausible options are virtually unchallengeable." *Id.* at 690-91; *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir.)("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."), *cert. denied*, 537 U.S. 1018 (2002); *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices").

Boykin has failed to show that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Boykin's grounds for review should be denied.

Boykin is not entitled to federal habeas corpus relief on this claim.

## VII.   The Claim of Ineffective Assistance of Appellate Counsel

Boykin complains that appellate counsel rendered ineffective assistance by failing to file a motion for new trial.

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *See Evitts v. Lucey,* 469 U.S. 387 (1985).  This court reviews counsel's appellate performance under *Strickland v. Washington,* 466 U.S. 668 (1984).  *See Goodwin v. Johnson,* 132 F.3d 162, 170 (5th Cir. 1998).  Boykin must allege and present facts that, if proven, would show that his attorney's representation was deficient and that the deficient performance caused Boykin prejudice.  *See Strickland,* 466 U.S. at 687-88, 692; *Jones v. Jones,* 163 F.3d 285, 300 (5th Cir. 1998).

The first element requires Boykin to show that his appellate counsel's conduct "fell below an objective standard of reasonableness." *United States v. Williamson,* 183 F.3d 458, 463 (5th Cir.

1999)(quoting *Strickland,* 466 U.S. at 688).  This court's review is deferential, presuming that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*  Effective assistance of appellate counsel does not mean counsel will raise every available nonfrivolous ground for appeal.  *See Evitts,* 469 U.S. at 394; *West v. Johnson,* 92 F.3d 1385, 1396 (5th Cir. 1996).  Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *See Evitts,* 469 U.S. at 394.  A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful.  *See Strickland,* 466 U.S. at 690-91.

To show prejudice, Boykin must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jones,* 163 F.3d at 302 (quoting *Strickland,* 466 U.S. at 694).  Such a reasonable probability makes the proceeding unfair or unreliable, so as to undermine confidence in the outcome.  *Green v. Johnson,* 160 F.3d 1029, 1043 (5th Cir. 1998)(citing *Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993)).

Boykin complains that appellate counsel rendered ineffective assistance by failing to schedule an evidentiary hearing on a motion for new trial.  Boykin states that on April 12, 2012, appellate counsel filed a motion for new trial.  Boykin complains that appellate counsel failed to schedule an evidentiary hearing on the seventy-fifth day after sentencing.

The state habeas court found:

> 2.  The Court finds, based on the clerk's record and the court reporter's record, that the applicant was represented in the primary case by Sara Wood (hereinafter referred to as "Wood") at his appeal.
> . . .
> 12.  The Court finds, based on the clerk's record and the court reporter's record, that on April 13, 2012, the applicant's appellate

> attorney filed a motion for new trial and asked for an evidentiary
> hearing. *See State's Writ Exhibit A, Motion for New Trial.*
> . . .
> 15. The Court finds that the applicant failed to specifically allege any
> factual basis that supports the allegations that his appellate counsel
> provided deficient conduct or how he was prejudiced as a result in the
> instant application.

(Docket Entry No. 15-26, pp. 57, 59, 60).

The state habeas court concluded:

> 11. The applicant fails to overcome the strong presumption that
> appellate counsel's conduct was within the range of reasonable
> professional assistance. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.
> Crim. App. 1999) (citing *Strickland v. Washington,* 466 U.S. 668
> (1984); *see also Ex parte Jarrett,* 891 S.W.2d 935, 938 (Tex. Crim.
> App. 1994), *overruled on other grounds, Ex parte Wilson,* 956
> S.W.2d 25 (Tex. Crim. App. 1997).
>
> 12. The totality of the representation afforded the applicant was
> sufficient to protect his right to reasonably effective assistance of
> appellate counsel. *Mercado v. State,* 615 S.W.2d 225, 228 (Tex.
> Crim. App. 1981).

(Docket Entry No. 15-26, p. 62).

As noted, Boykin alleges that appellate counsel rendered ineffective assistance by failing to

schedule a hearing on the defense's motion for new trial.  A defendant must file a motion for new

trial within thirty days of the trial court imposing sentence. *See* TEX. R. APP. P. 21.4 (a)-(b).  The

records shows that appellate counsel did file a timely motion for new trial on April 13, 2012.

(Clerk's Record, Vol. I, pp. 207-214).  Appellate counsel filed the certificate of presentment of

motion for new trial on April 23, 2012.  (Clerk's Record, Vol. I, p. 218).  Texas law further requires

a defendant to present a motion for new trial to the trial court within ten days of filing it.  *See* TEX.

R. APP. P. 21.6.  Appellate counsel complied with Texas's procedural requirements for filing and

presenting a motion for new trial.  The trial court must rule on a motion for new trial by written order within seventy-five days of imposing sentence or the motion will be deemed denied.  *See* TEX. R. APP. P. 21.8 (a)-(c).  Though appellate counsel complied with procedural requirements for filing a motion for new trial, the trial court denied the motion for new trial by operation of law.

Boykin cannot prevail on his claim of ineffective assistance of counsel because he has not shown that his counsel's actions fell below an objective standard of reasonableness and that Boykin suffered prejudice as a result.  *Strickland v. Washington,* 466 U.S. 668 (1984).  Boykin has failed to establish that but for appellate counsel's alleged errors, the trial court would have granted Boykin's motion for a new trial.  As grounds for the motion for new trial, Boykin complains of the failure to disclose the identity of the confidential informant.  This court has considered and rejected Boykin's claim based on a violation of his Sixth Amendment right to confront his accuser.  Any ineffective assistance claim predicated on the Confrontation Clause violation also fails. *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001)(finding that where each of the grounds underlying the alleged errors by counsel on appeal were found to lack merit, appellate counsel's failure to pursue relief on those bases does not constitute ineffective assistance of counsel since no prejudice resulted therefrom and because the reliability of the result of the appeal was not undermined thereby).

Boykin has failed to show that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, Boykin's grounds for review should be denied.

Boykin is not entitled to federal habeas corpus relief on this claim.

## VIII.   Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 20), is GRANTED. Boykin's petition for a writ of habeas corpus is DENIED.  This case is DISMISSED.  Boykin's motion for a writ of mandamus, (Docket Entry No. 23), is DENIED.  Boykin's motion for "rogatory" and settlement of case, (Docket Entry No. 18), and motion for evidentiary hearing, (Docket Entry No. 26), are DENIED.  Respondent's motion for extension of time, (Docket Entry No. 17), is GRANTED nunc pro tunc.  Any remaining pending motions are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right.  *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)).  Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further.  *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000).  Where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack,* 529 U.S. 484.

This court denies Boykin's petition after careful consideration of the merits of his constitutional claims.  This court denies a COA because Boykin has not made the necessary showing for issuance.  Accordingly, a certificate of appealability is DENIED.

SIGNED at Houston, Texas, on ____August 20____, 2015.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE